UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| EVA GALLOWAY, )<br>)<br>    *Plaintiff,* )<br>)<br>v. )<br>)<br>LINDA S. McMAHON, )<br>Acting Commissioner of Social Security,[1] )<br>)<br>    *Defendant.* ) | No. 1:06-cv-26<br>*Edgar / Lee* |

## MEMORANDUM

Plaintiff Eva Galloway brought this action seeking judicial review of the final decision of the Defendant Commissioner of Social Security ("Commissioner") pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). On December 21, 2004 an administrative law judge ("ALJ") denied Plaintiff a period of disability and disability insurance benefits ("DIB") pursuant to the Act, 42 U.S.C. §§ 416(I), 423, and 1382. [Tr. 12]. Plaintiff appealed the ALJ's decision to the Social Security Administration's ("SSA") Appeals Council. On December 20, 2005 the Appeals Council denied Plaintiff's request for review. [Tr. 6]. The ALJ's decision became the final decision of the Commissioner. *Id.* Plaintiff seeks judicial review of the ALJ's decision.

In his decision the ALJ made a number of findings. The ALJ determined that Plaintiff met the Act's disability insured status eligibility requirements. [Tr. 19]. He also found that Plaintiff had not engaged in "substantial gainful activity" since January 1, 2003. He found that

---

[1] Plaintiff originally named Jo Anne B. Barnhart as Commissioner of Social Security. In January of 2007, Linda McMahon succeeded Barnhart as Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), McMahon's name has been substituted automatically as a party. Fed. R. Civ. P. 25(d)(1).

Plaintiff had "severe" impairments, but that her combination of impairments were not medically equal to an impairment listed in 20 C.F.R. Part 404, Appendix 1, Subpart P, Regulations No. 4. *Id.* The ALJ concluded that Plaintiff's complaints of pain were not fully credible and that she had the residual functional capacity to perform "sedentary work activity." The ALJ determined that Plaintiff's current impairments did not prevent her from performing past relevant work and that she did not meet the Act's definition of disabled at any time. *Id.*

Following the filing of her appeal in this Court, Plaintiff moved for judgment on the pleadings. [Court Doc. No. 7]. The Commissioner moved for summary judgment. [Court Doc. No. 9]. This Court referred the matter to Magistrate Judge Lee pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). The Magistrate Judge issued a report and recommendation on January 22, 2007. [Court Doc. No. 12]. The only issue Plaintiff raised on appeal is whether the ALJ's conclusion that Plaintiff has no more than minimal mental impairment is supported by substantial evidence. *See* [Court Doc. No. 8]. Plaintiff does not dispute the ALJ's conclusion that she is limited to sedentary activity.

The Magistrate Judge concluded that substantial evidence did not support the ALJ's finding of minimal mental impairment. She determined that further findings by the ALJ regarding the Plaintiff's mental impairment were necessary and recommended reversing and remanding the ALJ's decision for further proceedings relating to the extent of Plaintiff's mental impairment. [Court Doc. No. 12].

The Commissioner timely objected to the Magistrate's report and recommendation. [Court Doc. No. 13]. This Court must conduct a *de novo* review of the portions of the report and recommendation to which objection is made. 28 U.S.C. § 636(b)(1)(c). This Court may

then either accept, reject or modify the magistrate's report and recommendation either in whole or in part. *Id.*

The Commissioner objects solely to the magistrate's "three reasons for reversing the administrative law judge's (ALJ's) finding that Ms. Galloway's mental impairment was not severe." [Court Doc. No. 13]. Because the Commissioner does not object to the magistrate's review of the evidence and summary of the legal background pertaining to an award of DIB, this Court finds no error in these portions of the magistrate judge's report and recommendation.

The Commissioner objects to the magistrate's alleged reliance on the conclusion of the examining psychologist, Dr. James McCabe, that Plaintiff had a Global Assessment of Functioning ("GAF") of 45 to 55. The Commissioner argues that both the SSA and the Sixth Circuit have expressly indicated that an ALJ does not need to rely on a GAF score to determine the severity of a mental disorder under the Act. The Commissioner further objects to the magistrate's alleged reliance on the reviewing psychologist's opinion that Plaintiff had mild mental functional limitations as support for her conclusion that substantial evidence did not support the ALJ's decision that Plaintiff was only mildly mentally impaired. The Commissioner finally objects to the magistrate's recommendation of reversal based on the ALJ's speculation that Plaintiff's menopausal syndrome may have caused her memory and concentration problems because any such error by the ALJ was harmless.

For the reasons expressed herein, the Court will **REJECT** the magistrate's determination that substantial evidence does not support the ALJ's decision. The Court will therefore **DENY** Plaintiff's motion for judgment on the pleadings and will **GRANT** the Commissioner's motion for summary judgment.

**I. Background**

The sole issue presented for judicial review is whether the ALJ's determination that Plaintiff suffered only a minimal mental impairment is supported by substantial evidence. The record indicates that at the time of the administrative hearing in 2004, Plaintiff was a 61-year old woman with a high school education and two years of community college. She possessed a sedentary, semi-skilled work background, including jobs as a claims examiner, office assistant, and leasing agent. [Tr. 15, 172, 356].

Plaintiff was involved in a motor vehicle accident around November of 2001. Upon her discharge from the hospital on December 6, 2001 she received the following diagnoses: (1) status post motor vehicle accident; (2) scalp avulsion on the left frontoparietal area; and (3) early signs of multiple sclerosis. [Tr. 100]. Dr. Philip Kelton, a plastic surgeon, conducted multiple surgeries on Plaintiff to correct a scalp defect following the motor vehicle accident. [Tr. 125]. Plaintiff claims she became disabled on June 27, 2002. [Tr. 356]. Plaintiff first applied for social security DIB on March 11, 2003. [Tr. 54].

Dr. James McCabe, Ph.D., the examining clinical psychologist, examined Plaintiff on June 23, 2003 to evaluate her claims of disability. [Tr. 171]. Dr. McCabe tested Plaintiff's I.Q. and found that she had a Verbal I.Q. of 75, a Performance I.Q. of 79, and a Full Scale I.Q. of 75. [Tr. 173]. These scores placed Plaintiff in the borderline range for intelligence. [Tr. 174]. Dr. McCabe further gave Plaintiff a GAF score of between 45 to 55 with fluctuating symptoms.[2] *Id.*

---

[2] A GAF is a score provided by a mental health examiner "on a scale of 0-100, with mental health highest at the high end; 50-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 463 (6th Cir. 2006). A GAF score of between 41-50 indicates serious symptoms or serious impairments in social, occupational, or school functioning. *See Pasco v. Comm'r of Soc. Sec.*,

at 175. Dr. McCabe also explored Plaintiff's activities of daily living:

> It is said to be easy for her to use a telephone directory, read the newspaper, watch television, and take medicine. With some effort, she is able to take a bath or shower, prepare meals, do laundry, drive a car, go to church, visit family, visit neighbors, visit friends, and have hobbies. It is said to be hard for her to clean house, shop for groceries, enjoy leisure activity, and cope with daily responsibilities. She is described as being unable to take the bus and pay bills.

[Tr. 172]. Dr. McCabe observed a mood of "mild to moderate depression" and found Plaintiff "oriented as to time, place, and person" with a "mildly impaired" "fund of general knowledge and information." *Id.* He noted that her neuropsychological screening was "not reflective of brain dysfunction." [Tr. 173].

> Dr. McCabe also made the following findings:
>
> [Plaintiff's] ability to attend, concentrate, and to avoid distractions and discriminate essential from nonessential detail are in the severely impaired range. Visual motor efficiency is at the average range. . . . Her spatial (nonverbal) perception and nonverbal conceptualization are in the average range. Visual abstract reasoning skills requiring classification, analogy, serialization, fluid thinking, and simultaneous processing, are in the mildly impaired range. Her awareness of common social consequences and sequences and thus 'social intelligence' are in the low average range.

[Tr. 174]. With respect to Plaintiff's scores on the Minnesota Multiphasic Personality Inventory ("MMPI"), Dr. McCabe noted that:

> [h]er validity scale configuration is very significantly skewed such that a fake bad approach could not be ruled out. Clinical scale elevations reflect extreme high level of depression, suspiciousness, and bizarre mentation. The latter two were not consistent with interview impression or mental status examination. . . . She is very dissatisfied with her current life style and reports being socially withdrawn. However she also reports an extremely high activity level which is not consistent with her stated sedentary lifestyle.

---

137 F. App'x 828, 841 n. 15 (6th Cir. 2005) (citing *Diagnostic & Statistical Manual of Mental Disorders*, Fourth Edition, American Psychiatric Association, Washington, D.C., 1994).

[Tr. 175].

      Dr. McCabe made the following summary conclusions:

> . . . [Plaintiff] is socially adept and able to interact with others when she so desires. She presents herself as preferring to be socially withdrawn. She is apparently able to care for her own personal needs and maintain a residence. She is able to cope with a modest range of daily activities. She does possess the intellectual essentials necessary to complete basic tasks. Prognosis is moderately guarded.

[Tr. 176].

      Following Dr. McCabe's examination, Dr. Norvin Curtis, Ph.D. completed a psychiatric review technique form ("PRTF") on July 17, 2003 indicating that Plaintiff's impairments were not severe. [Tr. 178]. He found evidence of Plaintiff having a mood disorder under 20 C.F.R. Pt. 404, Subpart P, App. 1, 12.04 Affective Disorders. [Tr. 181]; *see also* 20 C.F.R. Pt. 404, Subpart P, App. 1, 12.04. Dr. Curtis rated Plaintiff as having mild limitations in the following areas: restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence or pace. [Tr. 188]. Dr. Curtis' notes indicated the possibility of a "faking bad" approach and that Plaintiff's "[a]lleged limitations not supported by EOR." [Tr. 190].

      On September 18, 2003 Dr. William Cleland, M.D., completed a form regarding Plaintiff's application for social security DIB noting his conclusions that Plaintiff had a non-severe impairment with a "tendency toward malingering" and alleged limitations unsupported by the record. [Tr. 192]. He recorded his determination that Plaintiff was not disabled on a Social Security Administration Disability Determination and Transmittal form and indicated a diagnosis of mood disorder secondary to chronic pain. [Tr. 24].

      Although Plaintiff received treatment from several treating physicians, such as spine

surgeon Dr. Todd Bonvallet, neurologist Dr. Larry Gibson, and internist Dr. Shannon McCallie, the record does not reveal that Plaintiff obtained any treatment from a psychologist or psychiatrist for any mental conditions. Nor does the record reveal that Plaintiff received any treatment pertaining to her alleged memory loss, headaches, or tremors.

In November of 2004, Dr. Gibson noted a "possible traumatic brain injury"; however, he also noted that a prior Magnetic Resonance Imaging scan ("MRI") was unremarkable. [Tr. 232]. Dr. Gibson's plan noted that "[t]he patient is encouraged to maintain activities as tolerated since I have nothing really specific I am going to treat her with and otherwise we will see her back here in the future as needed." *Id.* In March of 2004 after a followup examination, Dr. Gibson noted that an MRI and an Electroencephalogram ("EEG") performed in November of 2003 were both unremarkable. [Tr. 275]. The EEG found no "focal abnormalities and no epileptic activity" and was "[e]ssentially normal." [Tr. 283].

During the administrative hearing on October 26, 2004 Plaintiff testified that she suffers from headaches, numbness in her right leg and that she "just can't concentrate or do the things [she] used to do." [Tr. 357]. She testified regarding her memory problems and her failure to keep her job as a leasing agent due to her inability to remember various computer codes and information related to paperwork completion. *Id.* at 358. Plaintiff further testified that she cannot perform household chores such as vacuuming and cooking, but that she does try to go walking to help her back and she does go out to eat on occasion. *Id.* at 361. She testified that she attends church when she "feel[s] like [she] can sit." *Id.* Plaintiff does not "usually" drive, nor does she shop for groceries. *Id.* She testified that her day consisted of "[s]leeping and that's about it, watching TV," and stated, "I get up and try to do little things but I don't be [sic] able to

complete them." *Id.* at 362.

Following Plaintiff's testimony and the testimony by a vocational expert, the ALJ expressed some concerns regarding Plaintiff's credibility. He specifically reviewed Plaintiff's evidence of disability and stated:

> Well, I'm going to be very frank and upfront with you on this. I think we have–credibility is a problem here. The Claimant alleges limitations as a result of some kind of brain injury resulting from a motor vehicle accident, but the MRI of the brain was unremarkable. EEGs testing for her claim of loss of concentration are equally unremarkable. She had an MMPI by our consultant, and he states, 'her validity scale configuration is very significantly skewed such that a fake-bad approach could not be ruled out.' And they did some neuropsychological screening on tests, . . . and spatial type tests: 'overall neuropsychological screening is not reflective of brain dysfunction.' So I'm having difficulty. Why should I believe this lady's story in light of – I mean she's never had any kind of psychological treatment or therapy. They–I don't know. You know, there's nothing here that I can see that shows that there was actually any brain damage. now they–what they did is she apparently had a – I guess the skull was scraped or something like that, and they had–they did some type of surgery to your– to make you look better if you will. . . . there's no evidence she was unconscious or anything of that nature. Why should I find that this lady is suffering from such brain dysfunction that – well, she's got migraines. I don't see the intensity of her migraines here. She said she has headaches. . . . Where's the other . . . clinical characteristics or even mention of it throughout here? But particularly we've got . . . we've checked her out in the MMPI, and it – that's not coming out very well. She also has a claim she's had a year of college yet her scores on the reading are . . . something like second grade level, extremely below what one would expect for somebody who has gone through college or had been in college and had the jobs that she has had in the past. . . . [W]hat would cause such a substantial loss of intellectual functioning? As I say, I'm having – I'm going to be upfront with you. I'm having trouble with the credibility problem.

[Tr. 362-63].

The ALJ's decision concluded:

> The medical evidence of record establishes that the claimant was involved in a motor vehicle accident with closed head injury in November 2001. The claimant alleges residuals such as headaches, tremors, and memory loss. The medical evidence shows that the claimant worked after her motor vehicle accident and objective tests do not support a disabling impairment, as two MRIs of the

-8-

brain were considered unremarkable. The claimant has continued to report tremors, but no neurological impairment has been diagnosed in spite of a specialized evaluation by Dr. Gibson. A psychological evaluation demonstrated no significant impairment. The claimant was oriented and her conversation was appropriate. Validity scales raised serious questions concerning the claimant's credibility. Also, neuropsychological screening was not reflective of brain dysfunction. . . .

    I have evaluated the claimant's mental impairments under the criteria for impairment listings 12.04. The claimant appears to meet the A, or diagnostic criteria, for this impairment. Under the B, or functional criteria, the claimant's impairments cause no more than mild difficulty completing daily activities or maintaining social interaction or concentration, persistence, and pace. There is no evidence the claimant has suffered episodes of decompensation of extended duration. The C criteria of listings 12.04 are not in evidence. Dr. McCabe's evaluation presents evidence of minimal mental impairment. As such, the claimant retains the mental capability to perform semi-skilled and unskilled work activity. . . .

    In summary, I find that the claimant retains the residual functional capacity to perform sedentary exertional activity. Such restrictions would not prevent the claimant from performing her past relevant occupation as a claims examiner or office assistant, which require sedentary exertion. For these reasons, I find that the claimant is not disabled.

[Tr. 17-18].

The magistrate's report and recommendation concluded that:

substantial evidence does not adequately support the ALJ's decision in light of the medical source opinions, including Plaintiff's GAF score. Dr. McCabe, the mental health professional of record who administer[ed] psychological testing to Plaintiff, indicated some concerns about the results of the MMPI administered to Plaintiff. Dr. McCabe nonetheless opined Plaintiff's GAF score was fluctuating between 45 and 55, indicating overall mental functioning was fluctuating between moderate and serious symptoms/impairment. Consequently, substantial evidence does not support the ALJ's finding that Dr. McCabe found only *minimal* mental impairment.

[Court Doc. No. 12, p. 15]. The magistrate recommended remanding this action to the ALJ for further findings regarding Plaintiff's mental impairment. *Id.* at 16-17.

## II.    Standard of Review

42 U.S.C. § 405(g) states in relevant part that

> [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, . . . .

42 U.S.C. § 405(g).

The Sixth Circuit has outlined the parameters for reviewing the Commissioner's determination regarding eligibility for DIB in accordance with 42 U.S.C. § 405(g). In *Warner v. Commissioner of Social Security* the Sixth Circuit stated:

> '[t]his Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. . . . Substantial evidence exists when a 'reasonable mind might accept' the relevant evidence 'as adequate to support a conclusion.' . . . As long as substantial evidence supports the Commissioner's decision, we must defer to it, " 'even if there is substantial evidence in the record that would have supported an opposite conclusion. . . .

375 F.3d 387, 390 (6th Cir. 2004) (quotations omitted); *see also*, 42 U.S.C. § 405(g); *Smith v. Comm'r of Soc. Sec.*, __ F.3d __, 2007 WL 1040037 *3 (6th Cir. 2007). Whether the substantial evidence supports the ALJ's conclusion must be determined by a review of the record as a whole. *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984). The Sixth Circuit has cautioned courts not to "'focus and base [their] decision on a single piece of evidence, and disregard other pertinent evidence.'" *Id.* (quoting *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978)).

The Commissioner's task is to "resolve conflicts in the evidence and to decide questions of credibility." *Felisky v. Bowan*, 35 F.3d 1027, 1035 (6th Cir. 1994). Further, "[t]he substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm." *Id.* (citations and quotation omitted). In

addition, ALJ determinations regarding a claimant's credibility "are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

### III. Analysis

Plaintiff bears the ultimate burden of establishing an entitlement to disability benefits by demonstrating the presence of a disability as defined by the Act. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . .

42 U.S.C. § 423(d)(2).

The Social Security regulations promulgated pursuant to the Act describe a five step "sequential evaluation process" for determining whether a claimant is disabled under the Act. *See* 20 C.F.R. § 404.1520(a)(4). The Sixth Circuit has recently summarized these five steps outlined in the Social Security regulations:

> In step one, the SSA identifies claimants who 'are doing substantial gainful activity' and concludes that these claimants are not disabled. If claimants get past this step, the SSA at step two considers the 'medical severity' of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. Claimants with impairments of insufficient duration are not disabled. Those with impairments that have lasted or will last at least twelve months proceed to step three.

> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. . . . A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.
>
> In the fourth step, the SSA evaluates claimants' 'residual functional capacity,' defined as 'the most [the claimant] can still do despite [her] limitations.' Claimants whose residual functional capacity permits them to perform their 'past relevant work' are not disabled. 'Past relevant work' is defined as work claimants have done within the past fifteen years that is 'substantial gainful activity' and that lasted long enough for the claimant to learn to do it. Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform 'substantial gainful activity' other than their past relevant work. Claimants who can perform such work are not disabled. The SSA bears the burden of proof at step five.

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2005) (citations and quotations omitted) (relying on 20 C.F.R. § 404.1520(a)(4)).

The regulations not only require the Commissioner to follow the five steps outlined above in evaluating mental impairments, but also require the use of a "special technique at each level in the administrative review process." 20 C.F.R. § 404.1520a. The PRTF follows the technique outlined in the regulations. The PRTF requires the mental examiner to rate the degree of functional limitation in the areas of activities of: daily living; social functioning; and concentration, persistence, or pace on a five-point scale of none, mild, moderate, marked, and extreme. *See* [Tr. 188]; 20 C.F.R. § 404.1520a(c)(4). The psychologist rates the fourth area of functional limitation, episodes of decompensation, using a four-point scale. *Id.* The regulations provide that:

> After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s). (1) If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.
> . . .

20 C.F.R. § 404.1520a(d)(1). 20 C.F.R. § 404.1520a(e) requires completion of the PRTF to demonstrate application of the technique. The ALJ decision must incorporate "the pertinent findings and conclusions based on the technique." 20 C.F.R. § 404.1520a(e)(2).

The ALJ concluded that Plaintiff's mental impairment did not preclude her from performing her past relevant work of an office assistant or a claims examiner. Thus, the ALJ determined that Plaintiff did not meet the definition of disabled due to his conclusion that she could still perform her past relevant work despite her mental impairment. The ALJ's decision reviewed the medical evidence, including Plaintiff's two MRIs and neuropsychological screening. [Tr. 18]. The ALJ also reviewed the diagnostic criteria and functional criteria outlined in the PRTF for Plaintiff's diagnosed mood disorder due to chronic pain. The ALJ concluded that Plaintiff's physical impairments restricted her to sedentary activity, but that she retained the capacity to perform semi-skilled and unskilled work activity. *Id.* However, the ALJ also concluded that "Dr. McCabe's evaluation presents evidence of minimal mental impairment." *Id.* It is this conclusion which the magistrate judge found to be unsupported by substantial evidence. The magistrate judge also indicated that substantial evidence did not support the ALJ's decision "in light of the medical source opinions, including the Plaintiff's GAF score."

In her objections to the magistrate's report and recommendation, the Commissioner

reminds this Court of the Sixth Circuit's reluctance to assign any particular weight to GAF scores. As the Sixth Circuit noted in *Kornecky v. Commissioner of Social Security*, "[a] GAF score may help an ALJ assess mental [residual functional capacity], but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." 167 F. App'x 496, 503 n. 7 (6th Cir. 2006).

The Sixth Circuit has described GAF scores analogous to Plaintiff's and has indicated what weight such scores should provide in making a determination of disability. A score of 55 "indicat[es] moderate symptoms and moderate difficulty in social, occupational or school functioning" while a score of 50 indicates "'[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job).'" *DeBoard v. Comm'r of Soc. Sec.*, 2006 WL 3690637 (6th Cir. 2006) (quoting *Pasco v. Comm'r of Soc. Sec.*, 2005 WL 1506343 *10 n.15 (6th Cir. 2005) and *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994)). A GAF score of between 61 and 70 is in the "mild" range. *See Covucci v. Apfel*, 31 F. App'x 909, 913 (6th Cir. 2002).

In *DeBoard* the Sixth Circuit reviewed the impact of various GAF scores on a review of eligibility for DIB:

> We have previously held that the failure to reference a Global Assessment Functioning score is not, standing alone, sufficient ground to reverse a disability determination. . . . Moreover, the Commissioner 'has declined to endorse the [GAF] score for 'use in the Social Security and [Supplemental Security Income] disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.' . . . Accordingly we have affirmed denials of disability benefits where applicants had [GAF] scores of 50 or lower.

2006 WL 3690637 at *4 (citing *Smith v. Comm'r of Soc. Sec.*, 2003 WL 22025046 (6th Cir. 2003); *Nierzwick v. Comm'r of Soc. Sec.*, 2001 WL 303522 (6th Cir. 2001); *Thurman v. Apfel*, 2000 WL 491673 (6th Cir. 2000)) (other citations omitted). In *Kornecky* the Sixth Circuit held that "[i]f other substantial evidence (such as the extent of the claimant's daily activities) supports the conclusion that she is not disabled, the court may not disturb the denial of benefits to a claimant whose GAF score is as low as [40 to 45] or even lower." 167 F. App'x 496, 511 (6th Cir. 2006). It further noted that it was "not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Id.*

In a recent decision the Sixth Circuit addressed a claimant's complaint "that the mental RFC determination must be defective because she ha[d] been rated 45-50 on the Global Assessment of Functioning (GAF) scale." *Smith*, __ F.3d ___, 2007 WL 1040037 at *4. The Court responded that:

> [e]ven assuming GAF scores are determinative, the record supports a GAF in the high 40s to mid 50s, which would not preclude her from having the mental capacity to hold at least some jobs in the national economy. We thus hold that the ALJ's findings as to both her physical and mental RFC were supported by substantial evidence and cannot be set aside under 42 U.S.C. § 405(g).

*Id.* Thus, the Sixth Circuit has indicated that GAF scores are not necessarily determinative and that even scores as low as Plaintiff's do not necessarily indicate a severe mental impairment.

However, Plaintiff argues that the magistrate did not merely rely on Plaintiff's GAF scores, but rather reasonably determined that the ALJ's assertion that Dr. McCabe found only minimal mental impairment was not supported by substantial evidence. Plaintiff relies upon the U.S. Supreme Court's *Chenery* doctrine for support of her argument. In *Securities and Exchange Commission v. Chenery Corporation*, the U.S. Supreme Court summarized a "simple

but fundamental rule of administrative law." 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). The Court stated:

> [t]hat rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Id.* Plaintiff argues that under the *Chenery* doctrine, this Court is limited to affirming the ALJ on the reasoning specified by the ALJ, including the ALJ's finding that Dr. McCabe's report found minimal mental impairment. Finding otherwise, the Plaintiff argues, would be an attempt to engage in a post-hoc rationalization to legitimize the ALJ's error. *See e.g., Williams v. Comm'r of Soc. Sec.*, 2007 WL 930427 *1 (6th Cir. 2007).

However, in *Berryhill v. Shalala*, the Sixth Circuit addressed the same argument raised by Plaintiff and noted:

> [Claimant] is correct that, in large part, an agency's decision must be affirmed on the grounds noted in the decision. However, the Secretary is also correct in noting that we can look to see if the error is harmless. In this regard, we find the First Circuit's pronouncement, as stated in *Kurzon v. United States Postal Serv.*, . . . persuasive:
>
> While agency decisions must be sustained, if at all, on their own reasoning, . . . this principle "does not mechanically compel reversal 'when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of [the] decision reached.'" Where a subsidiary finding is unfounded, the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture . . .'

4 F.3d 993, 1993 WL 361792 *7 (6th Cir. 1993) (quoting *Kurzon v. United States Postal Serv.*, 539 F.2d 788, 796 (1st Cir. 1976)); *see also, VanSingel v. Comm'r of Soc. Sec.*, 26 F. App'x 488,

490 (6th Cir. 2002); *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 847 (6th Cir. 2005) (noting no need to review alleged post-hoc rationalizations by district court where Court found ALJ's decision supported by substantial evidence).

In addition, at least one district court in this Circuit has addressed the issue of whether the unpublished decision in *Berryhill* supporting a harmless error rule in social security cases conflicts with the *Chenery* doctrine. *See Pechatsko v. Comm'r of Soc. Sec.*, 369 F.Supp.2d 909, 913 (N.D. Ohio 2004). In determining that the rule in *Berryhill* did not violate the *Chenery* doctrine, the district court noted that the *Chenery* doctrine was applicable to a judgment that the "'administrative agency alone is authorized to make.'" *Id.* at 913 (quoting *Chenery*, 332 U.S. at 196, 67 S.Ct. 1575). The district court reviewed the power Congress provided to courts in 42 U.S.C. § 405(g) to affirm, modify or reverse the decision of the Commissioner, "*with or without remanding for a rehearing*." *Id.* Because 42 U.S.C. § 405(g) authorizes courts to make their own determinations regarding disability benefits, even without remand to the Commissioner, the judgment is not the agency's alone to make, but a power shared with the courts. Therefore, the district court concluded, the *Berryhill* harmless error rule did not violate the *Chenery* doctrine. *Id.* at 913-14.

In this action the Court is also troubled by the ALJ's finding that "Dr. McCabe's evaluation presents evidence of minimal mental impairment." [Tr. 18]. Dr. McCabe's report, including the GAF scores he assigned to Plaintiff, demonstrates some concerns regarding Plaintiff's mental abilities. The GAF score indicates his belief, despite his concerns with possible "fake-bad" MMPI results, that Plaintiff had either moderate or serious mental impairments. However, upon review of the entire record, the Court cannot say that the ALJ's

-17-

overall conclusion that Plaintiff is not so severely impaired that she is unable to perform her past relevant work is not supported by substantial evidence. Thus, the Court concludes that the ALJ's specific finding that Dr. McCabe found only minimal mental impairment constitutes a harmless error as described in *Berryhill*.

Dr. Curtis completed the PRTF and rated Plaintiff's degree of functional limitation as mild in the areas of restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. He found no degree of functional limitation in the area of episodes of decompensation. The Commissioner generally finds a mental impairment with such ratings non-severe. *See* 20 C.F.R. § 404.1520a(d)(1). Thus, Dr. Curtis' completion of the PRTF supports the ALJ's finding of a non-severe mental impairment.

Moreover, Plaintiff's MRIs and EEG were unremarkable and revealed no objective indications of brain trauma. Although Plaintiff complained of memory loss, headaches, depression, tremors and inability to concentrate, the record does not reveal any psychological or other medical treatment that Plaintiff sought for these symptoms. This Court is aware as well of Plaintiff's testimony during the administrative hearing regarding her difficulty in completing daily tasks and her general lethargy; however, the ALJ clearly stated that he saw some credibility problems with Plaintiff's story. This Court must defer to the ALJ's findings of credibility. *See Buxton*, 246 F.3d at 773.

In addition, while the GAF scores suggest at least some moderate to serious mental impairments, the Sixth Circuit has cautioned that GAF scores are not dispositive. Nor is Plaintiff's borderline intellectual functioning indicative of a severe mental impairment that

would automatically preclude her from performing her past relevant work. In order to be eligible for disability benefits, the Plaintiff must demonstrate a mental impairment of such severity that she is unable to perform her past relevant work as a claims examiner or office assistant. *See* 42 U.S.C. § 423(d)(2).

Finally, although it was improper for the ALJ to speculate that Plaintiff's memory issues were symptoms of her menopausal syndrome, this speculation did not alter his analysis, and thus, also constitutes harmless error.

The denial of DIB may not have been the course this Court would have chosen were it in the ALJ's position. However, this Court concludes that the ALJ's determination that Plaintiff is not disabled as defined by the Act is within the "zone of choice" provided to the Commissioner in making determinations of entitlement to DIB benefits. *See Felisky*, 35 F.3d at 1035.

**IV. Conclusion**

The Court concludes that substantial evidence supports the ALJ's overall determination that Plaintiff was not prevented from performing past relevant work and was not disabled within the meaning of the Act. The magistrate's report and recommendation concluding otherwise will be **REJECTED**.

The Court will **DENY** Plaintiff's motion for judgment on the pleadings. The Court will **GRANT** the Commissioner's motion for summary judgment.

A judgment will enter.

                                                 */s/ R. Allan Edgar*
                                                 R. ALLAN EDGAR
                                   UNITED STATES DISTRICT JUDGE